UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>Vision Care of Maine<br>Limited Liability Company<br><br>Debtor | Chapter 11<br>Case No. 24-10166 |
| Vision Care of Maine, Limited Liability Company<br>and<br>Tanya Sambatakos, Chapter 11 Trustee<br>for the Estate of Vision Care of Maine,<br>Limited Liability Company<br><br>Plaintiffs[1]<br><br>v.<br><br>ASD Specialty Healthcare, LLC<br>d/b/a Besse Medical<br><br>Defendant | Adversary Proceeding<br>No. 24-01009 |

## MEMORANDUM OF DECISION

Defendant ASD Specialty Healthcare, LLC d/b/a/ Besse Medical ("Besse Medical") seeks dismissal of the remaining claims of Plaintiff Vision Care of Maine, Limited Liability Company ("Vision Care"), based on Vision Care's failure to state a claim upon which relief can be granted. As set forth below, the Court agrees that dismissal is warranted.

---

[1] The Chapter 11 Trustee did not participate in the matter at issue here. She was appointed and added as a plaintiff in this adversary proceeding after the matter had been fully briefed, heard, and taken under advisement. Thus, this memorandum of decision references Vision Care of Maine, Limited Liability Company, as though it were the only plaintiff.

1

**I.   Background**

Soon after filing a voluntary petition under chapter 11 of the Bankruptcy Code, Vision Care began this adversary proceeding against Besse Medical. Vision Care's amended complaint (D.E. 33) ("Amended Complaint")—the operative complaint here—had two counts when filed. Count II has since been dismissed with prejudice at Vision Care's request (D.E. 48), leaving only Count I. In it, Vision Care seeks a declaration that Besse Medical holds no "valid, perfected and/or enforceable security interest . . . in any funds deposited in [Vision Care]'s bank accounts before or after [Vision Care's bankruptcy filing]." Am. Compl. ¶ 34. In a motion to dismiss, Besse Medical argues that Vision Care has not alleged sufficient facts to state a claim upon which such relief could be granted and seeks dismissal of Count I accordingly (D.E. 17, 39) ("Motion to Dismiss").[2] See Fed. R. Civ. P. 8(a)(2), 12(b)(6); Fed. R. Bankr. P. 7008, 7012(b). In its opposition, Vision Care disagrees (D.E. 56). Counsel for both parties presented further argument at a non-evidentiary hearing on the matter.

**II.   Analysis**

As required, in evaluating whether Vision Care has stated a plausible—not just conceivable—claim to relief in Count I, the Court has accepted the well-pleaded (i.e., nonconclusory) factual allegations as true and has drawn all reasonable inferences in Vision Care's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Further, in this "context-specific task" of ascertaining whether Vision Care has stated a plausible claim, the Court has "draw[n] on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

---

[2] When the Amended Complaint was filed, Besse Medical had a motion to dismiss pending against the original complaint (D.E. 17), which it then incorporated into a renewed motion to dismiss (D.E. 39).

2

> Essentially, a "complaint states a plausible claim if the factual content permits the reasonable inference that the plaintiff is entitled to the relief" requested. Calais Reg'l Hosp. v. Anthem Health Plans of Me. (In re Calais Reg'l Hosp.), 616 B.R. 449, 453 (Bankr. D. Me. 2020). "The relevant inquiry focuses on the reasonableness of the inference . . . that the plaintiff is asking the court to draw" from the alleged facts. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011). Although a plaintiff need not establish a probability of success on the merits to survive a motion to dismiss, [its] pleading must do something more than demonstrate a possibility of such success. See Iqbal, 556 U.S. at 678.

Albert v. Levitt (In re Levitt), Ch. 7 Case No. 24-10035, Adv. No. 24-01002, 2024 WL 4378991, at *2 (Bankr. D. Me. Oct. 2, 2024).

### a. Factual Allegations[3]

The factual allegations pertinent to Count I are as follows. Vision Care provides medical services through facilities in Bangor and Lincoln, Maine. Am. Compl. ¶ 8. In September 2017, Vision Care contracted with Besse Medical to enable Vision Care to buy pharmaceutical products from Besse Medical on credit extended by Besse Medical. Id. ¶ 12. In that original contract, Vision Care granted Besse Medical a security interest in all Vision Care's personal property. Id.

When the parties entered into their third contract in September 2022, Vision Care again granted Besse Medical, among others, a security interest in Vision Care's personal property, including all its accounts and proceeds of accounts. See id. ¶ 15. Besse Medical named Vision Care as the debtor on UCC Financing Statements that it filed with the Maine Secretary of State in January 2018 and November 2022 (as a continuation). Id. ¶ 14; Am. Compl. Ex. A.

---

[3] At the hearing on the Motion to Dismiss, counsel to Vision Care promptly abandoned Count I's separate claim that Besse Medical had no security interest in Vision Care's health-care-insurance accounts receivable that involve rights to payment under government programs such as Medicare and MaineCare (a Medicaid program). In a separate order issued concurrently with this decision, that claim is being dismissed with prejudice. Thus, factual allegations that relate only to that claim are not included here. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012) (noting that, when ruling on motion to dismiss, court may consider plaintiff's concessions in response to motion).

3

Around September 2022 through January 2023, Vision Care bought pharmaceutical products from Besse Medical on credit.[4]  Am. Compl. ¶ 17.  Besse Medical billed Vision Care for the purchases, but Vision Care did not pay all the bills.  Id. ¶¶ 18-19.  Besse Medical then sued Vision Care (and its guarantor), asserting claims based on the unpaid debt.  Id. ¶ 20.  As of April 2024, Besse Medical calculated the debt to be over $4 million.  Id. ¶ 23.  Vision Care filed its bankruptcy petition while Besse Medical's lawsuit remained pending.  See id. ¶¶ 21, 24-26.

At all times relevant here, Vision Care has had a joint bank account with a related entity.[5]  Id. ¶¶ 10-11.  When Vision Care has received payments for services provided, the funds have been deposited into that joint account.  Id. ¶ 11.  Likewise, when the related entity has received payments for services provided, the funds have been deposited into the joint account.  Thus, Vision Care's funds and the related entity's funds have been commingled.  Id.

### b. Count I: Declaratory Judgment

In the Amended Complaint, specifying no legal theory, Vision Care concludes that "Besse [Medical] acquired no enforceable security interest in any funds of [Vision Care] deposited in any of [Vision Care]'s bank accounts."[6]  Am. Compl. ¶ 32; see also id. ¶¶ 33-34.  In seeking dismissal, Besse Medical looks to Article 9-a of the Uniform Commercial Code in Maine.  Article 9-a generally applies to, among other things, transactions that create security

---

[4] The Amended Complaint states that "Besse [Medical] shipped the purchased pharmaceutical drugs to [Vision Care,]" ¶ 17, but says nothing about Vision Care's receipt of such shipments or whether there was any issue arising in the order fulfillment process.  Given the lack of such allegations, however, it is reasonable to assume that any such issues were not material to the facts in Count I.

[5] There is no allegation that the related entity was a party to any of the contracts with Besse Medical mentioned above.

[6] The joint bank account is the only account identified in the Amended Complaint and, thus, is the only bank account discussed herein.

interests in personal property by contract. See Me. Rev. Stat. Ann. tit. 11, § 9-1109(1)(a). Besse Medical identifies provisions of Article 9-a that could be relevant and contends that the Amended Complaint lacks sufficient facts to state a plausible claim to relief under those provisions. In opposing dismissal, Vision Care points to the same and other provisions of Article 9-a—thus agreeing that the legal theory for Count I is rooted there.

At the motion to dismiss hearing, contrary to unsupported intimations in the Amended Complaint, Vision Care's counsel conceded that Besse Medical's security interest was valid and perfected in all Vision Care's accounts receivable as original collateral.[7] Vision Care's counsel also conceded that its funds in the joint bank account were the cash proceeds of that original collateral. Although perhaps not precisely articulated, Vision Care's primary argument then seemed to be that, due to the commingling noted above, Besse Medical's security interest either did not attach to the cash proceeds of the original collateral or, if it did attach and was initially perfected, it became unperfected. This argument requires delving briefly into Article 9-a's § 9-1315—"Secured party's rights on disposition of collateral and in proceeds," Me. Rev. Stat. Ann. tit. 11, § 9-1315.[8]

In general, "[a] security interest [in original collateral] attaches to any identifiable proceeds of [that] collateral." See id. § 9-1315(1)(b) (emphasis added); see also id. § 9-

---

[7] As to the Amended Complaint's intimations, counsel explained that the use of "purport" in statements such as "[Vision Care] purportedly granted to Besse [Medical] a security interest," Am. Compl. ¶ 12, was a "rhetorical flourish" that could be stricken, at least for purposes of resolving the Motion to Dismiss. As to the overall concessions about Besse Medical's security interest, counsel first made the concessions without any qualification but later, when repeating them, said they were "for purposes of this hearing."

[8] Vision Care's primary argument is derived from the declaration sought in Count I of the Amended Complaint and counsel's discussion of § 9-1315 at the hearing. That argument is addressed below. Other arguments by Vision Care (particularly those focused on § 9-1315(4)(a) and (c)) were not directly challenged by Besse Medical, do not affect the outcome here, and thus are not addressed.

5

1102(64) (defining "proceeds").  Automatically upon attachment, "[a] security interest in [those identifiable] proceeds is a perfected security interest if the security interest in the original collateral was perfected."  See id. § 9-1315(3).  Then, that automatically perfected security interest "becomes unperfected on the 21st day after the security interest attaches to the proceeds unless" certain circumstances exist.  See id. § 9-1315(4).  One such circumstance—in which perfection remains intact—is when "the proceeds are identifiable cash proceeds."  Id. § 9-1315(4)(b); see also id. § 9-1102(9) (defining "cash proceeds" as "proceeds that are money, checks, deposit accounts or the like").

Proceeds, including cash proceeds, can be commingled with other property and yet still be identifiable proceeds, see id. § 9-1315(2), to which a security interest attaches and is perfected, id. § 9-1315(1)(b), (3).  See also id. § 9-1205(1)(a)(iv) (providing that debtor's ability to commingle (or use or dispose of) proceeds does not alone invalidate security interest).  When proceeds that are not goods, including cash proceeds, have been commingled with other property, the proceeds are identifiable "to the extent that the secured party identifies the proceeds by a [permissible] method of tracing[.]"  Id. § 9-1315(2)(b).

Here, to recap, Vision Care conceded that Besse Medical had a valid and perfected security interest in Vision Care's accounts receivable as original collateral.  Proceeds of that original collateral were cash proceeds deposited into Vision Care's joint bank account—shared with a related entity that also deposited its own funds in the account.  Thus, the cash proceeds were commingled with other property.  Commingling alone, however, would not have prevented Besse Medical's security interest from attaching to, becoming automatically perfected in, and remaining perfected in the cash proceeds.  See Me. Rev. Stat. Ann. tit. 11, § 9-1315(1)(b), (2)(b), (3), (4)(b).  If Besse Medical can identify, through a permissible tracing method, any

6

cash proceeds of its original collateral among funds in the joint bank account, Besse Medical's security interest would have (1) attached to those identifiable cash proceeds, (2) automatically become perfected based on the perfected security interest in the original collateral, and (3) not become unperfected. See id. Yet, in concluding in the Amended Complaint that Besse Medical has no security interest in Vision Care's joint bank account funds, Vision Care does not address Besse Medical's ability to identify cash proceeds—an obvious potential defense.

In opposing dismissal, Vision Care posits that Besse Medical would bear the burden of proof on such a defense and, thus, to state a claim showing its entitlement to relief, Vision Care need not allege any facts on the issue of identifying cash proceeds. Pl.'s Opp'n ¶¶ 12-13. Vision Care further posits that—given the limitations on what a court can consider when ruling on a motion to dismiss—consideration of any such defense and related facts must wait until later procedural phases such as when ruling on any summary judgment motions or at trial. Id.[9] So, according to Vision Care, it is too soon to tackle this ultimate question. At the hearing, Vision Care's counsel admitted that, by such logic, a debtor could commingle cash proceeds with other money in nominal amounts (e.g., one dollar) to gain impunity from a secured creditor's motion to dismiss for failure to state a claim to relief.

---

[9] Vision Care cites two decisions to bolster its position: Levin v. Javeri (In re Firestar Diamond, Inc.), 654 B.R. 836 (S.D.N.Y. 2023), and Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC), 515 B.R. 117 (S.D.N.Y. 2014). Neither is sufficiently analogous to lend any support to Vision Care's argument that it need not address identifiability to state a claim to relief here or that identifiability cannot be addressed until a later procedural phase. Although both cited decisions mention commingling and tracing and are in the posture of addressing motions to dismiss, the relevant similarities end there. Broadly, both involve bankruptcy trustees as plaintiffs attempting to recover funds that had been allegedly fraudulently transferred. Given the nature of those claims (and to some extent one trustee-plaintiff's limited information before discovery), the courts concluded that the plaintiffs' factual allegations showing that the transfers had occurred were sufficient facts for stating plausible claims to relief and that precise tracing allegations to address the defendants' possible commingling of transferred assets with other property were not necessary. Firestar Diamond, 654 B.R. at 878, 891; BLMIS, 515 at 151-53.

As an initial matter, when evaluating whether a plaintiff has stated a claim to relief, courts commonly consider defenses that are apparent from a complaint's factual allegations—notwithstanding that a defendant may bear the burden of proof on the defense.[10]  Factoring such defenses into the plausibility analysis of a claim at the motion to dismiss stage prevents wasteful litigation.  Cf. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 56 (1st Cir. 2012) (citing Twombly, 550 U.S. at 558-59, and observing that requiring claim plausibility as prerequisite to discovery phase can help to prevent unwarranted losses of defendants' resources, including losses arising from settling weak claims in effort to avoid costly steps leading to summary judgment).

Here, although no factual allegations in the Amended Complaint raise it, the identifiability defense is in the foreground not only because tracing can thwart commingling's effects but because Vision Care's demanded relief assumes that that defense will fail.  That is, by seeking a declaration that Besse Medical has no security interest in funds in Vision Care's joint bank account, Vision Care conveys the conclusion that Besse Medical will be unable to identify any cash proceeds—either because Besse Medical will decline to raise that defense or will fail to succeed on it.  Vision Care must have had some factual basis for this conclusion; yet, it alleges no facts that would support its bold position directly.  Nor is it reasonable to infer support from the facts alleged.  Ultimately, none of the facts alleged in the Amended Complaint suggest how the commingling here could make the identifiability defense a nonstarter.

---

[10] The affirmative defense of "statute of limitations," Fed. R. Civ. P. 8(c)(1), provides a classic example. A defendant raising this defense generally must show that the claim in question is time-barred. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe–Jiménez, 659 F.3d 42, 50 n.10 (1st Cir. 2011).  Yet, when that defense is apparent from the factual allegations in the complaint, a court can dismiss the time-barred claim based on a failure to state a claim upon which relief can be granted.  E.g., Gonzalez Figueroa v. J.C. Penney Puerto Rico, Inc., 568 F.3d 313, 316, 318 (1st Cir. 2009).

With factual allegations that show commingling, Vision Care has stated a claim that is potentially consistent with Besse Medical having no security interest in funds in Vision Care's joint bank account. Consistent, however, is not enough to show that Vision Care is entitled to the declaration that it seeks. See Iqbal, 556 U.S. at 678-80 (citing Twombly, 550 U.S. at 565-67, 70). Consistent means that Vision Care's claim to relief is conceivable but not necessarily plausible, as required. See id. (quoting Twombly when emphasizing that factual allegations "'merely consistent with'" being entitled to relief are insufficient to "'nudge[]'" claims "'across the line from conceivable to plausible'").

The factual allegations that show commingling are also consistent with Besse Medical having a security interest in funds in Vision Care's joint bank account—as Besse Medical could identify the funds as being the cash proceeds of its original collateral. Without any fact or reasonable inference tending to preclude this outcome, it is not plausible that Vision Care is entitled to a declaration that Besse Medical has no security interest in those funds.

Essentially, to get from a conceivable claim to a plausible claim, Vision Care would need to say why Besse Medical is not anticipated to identify cash proceeds. Such additional factual allegations would not need to be so detailed as to counter all possible tracing efforts that might be presented at trial. Perhaps alleging the information already within Vision Care's knowledge that led it to believe that Besse Medical would be unable to defend against the commingling here would suffice. But alleging facts that show commingling, without more, does not.[11] See Iqbal,

---

[11] In its bankruptcy case, Vision Care and the recently appointed Chapter 11 Trustee have made statements repeatedly assuring that Vision Care's funds and the related entity's funds in the joint bank account are entirely distinguishable. The Court has not considered those statements in reaching the conclusion above, but, if leave to further amend the complaint were to be sought, the Court would expect a reconciliation of those statements with the position taken in this adversary proceeding. See Fed. R. Civ. P. 15(a)(2); Fed. R. Bankr. P. 7015.

9

556 U.S. at 678-80 (recognizing that, while "'detailed factual allegations'" are not required, plausibility depends on context and requires "more than the mere possibility" of entitlement to relief, with "reviewing court to draw on its judicial experience and common sense").

### III. Conclusion

As set forth above, dismissal of Count I is warranted. The Court will enter a separate order accordingly.

Dated: March 13, 2025

/s/ Peter G. Cary
_____
Peter G. Cary
United States Bankruptcy Judge
District of Maine